IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ACE PROPERTY AND CASUALTY INSURANCE COMPANY<br>Plaintiff<br>vs<br>PUERTO RICO PORTS AUTHORITY; IVYPORT LOGISTICAL SERVICES, INC.; ALFONSO FERNÁNDEZ-CRUZ; MARIA DE LOS ANGELES NAVAS-PAVIA<br>Defendants | CIVIL 14-1042CCC |

**OPINION AND ORDER**

This is an action for declaratory judgment filed by plaintiff ACE Property and Casualty Insurance Company (ACE) seeking a declaration of what insurance coverage, if any, it owes defendant Puerto Rico Ports Authority (PRPA) for claims asserted against it in a local lawsuit filed by additional defendants Ivyport Logistical Services, Inc. (Ivyport), Alfonso Fernández-Cruz (Fernández) and María de los Angeles Navas-Pavía (Navas). Before the Court now is the Motion to Dismiss Based on Abstention Grounds filed by defendants Ivyport, Fernández and Navas on May 21, 2014 (**D.E. 15**), later supplemented on December 31, 2014 (**D.E. 26**), and ACE's oppositions to both motions (D.E. 18 and D.E. 27).

The relevant facts, taken mostly from plaintiff's Amended Complaint (D.E. 17), follow. Ivyport was a tenant of PRPA at the Luis Muñoz Marín International Airport, where it offered ground handling services to various airlines. Given that Ivyport, who allegedly had a long standing history of not paying rent to PRPA, defaulted on a rent payment plan it had established with PRPA, on July 31, 2008 PRPA revoked certain access permits used by Ivyport employees in order to provide ground handling services to the airlines. Ivyport

CIVIL 14-1042CCC                            2

reacted the following morning by seeking a preliminary injunction in the local court, which successfully restored the revoked access permits that same day. On August 6, 2008, Ivyport then filed a damages suit against PRPA in the local court, which it later amended on September 6, 2011 to, among other things, include ACE as a co-defendant under Puerto Rico's direct action statute (26 L.P.R.A. § 2003). It there claimed that on or about July 7, 2008 PRPA had contacted two of its airline clients (specifically COPA Airlines and LIAT Airlines) telling them that they should seek ground handling services elsewhere because effective on July 31, 2008 Ivyport would no longer be able to service them. Ivyport also alleged in said local lawsuit that PRPA had revoked its access permits on July 31, 2008, and did not allow it to protect its equipment when it did so, an action which it claimed constituted an illegal attachment of property. Ivyport further averred that as a result of PRPA's actions, it lost COPA, LIAT and IBERIA airlines as clients, and was put out of business. Ivyport seeks compensation from PRPA for the value of its business lost, which it alleges is in excess of $15,000,000.00. Joining Ivyport as co-plaintiffs in its suit are Fernández and Navas, who were shareholders and officers of Ivyport at the time, and who claim to have suffered mental anguish as a result of PRPA's actions for which they seek compensation in excess of $1,500,000.00.

At the time of the events complained in the local lawsuit filed by Ivyport, Fernández and Navas against PRPA, ACE had issued to PRPA a general liability policy, number AAPN00980080004, effective from August 20, 2007 to August 20, 2008. As noted above, ACE filed this federal action seeking a declaratory judgment that said policy does not cover the damages claimed against PRPA in the local complaint.

CIVIL 14-1042CCC                    3

    Defendants have moved for the dismissal of ACE's complaint on abstention grounds, claiming that the issue of the insurance policy coverage is currently before the Commonwealth court as part of the action filed by them in said forum.  While recognizing that this Court has jurisdiction over ACE's complaint, and that the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction,"  (Motion, at p. 3, ¶ 5), defendants string-cite to Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) and to Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1 (1983) and aver that factors presumably present in this case such as the inconvenience of the federal forum, the desirability to avoid piecemeal litigation, the adequacy of the state forum for a complete and prompt resolution of all issues between the parties and the applicability of Puerto Rico law to said issues all counsel for a deferral by this Court to the parallel Commonwealth suit.

    ACE opposed the dismissal motion, highlighting first that this suit is not identical to the Commonwealth action for in contrast to this declaratory action, the local case does not contain claims between ACE and PRPA regarding what coverage is due under the policy.  Additionally, ACE stresses that abstention in favor of parallel state actions is governed by the rule of "exceptional circumstances" developed by the Supreme Court in Colorado River and Moses Cone, and that a correct application of said rule warrants the exercise of jurisdiction by this Court.

    There are four established types of abstentions: Pullman-type (avoiding a constitutional determination by allowing a state court to construe state law), Burford-type (deferring to a state regarding difficult questions of state law that involve significant policy considerations), Younger-type (invoking federal

CIVIL 14-1042CCC               4

jurisdiction to restrain criminal proceedings) and Colorado-River-type. This last one, applicable when "exceptional circumstances" counsel against duplicative lawsuits in federal and state court, is the one invoked by defendants here.

    In determining whether Colorado River abstention is warranted, it must be noted at the outset that "the presence of parallel litigation in state court will not in and of itself merit abstention in federal court," Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 27 (1st Cir. 2010), for "[c]oncurrent federal-state jurisdiction over the same controversy does not generally lessen the federal courts' 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" Id., quoting Colorado River, 424 U.S. at 817. Recognizing this reality, the Court of Appeals has stressed that "[t]he crevice in federal jurisdiction that Colorado River carved is a narrow one, . . . with '[o]nly the clearest of justifications' warranting dismissal." Id., quoting Colorado River, 424 U.S. at 819. Courts are only allowed to depart from their duty to decide a controversy properly within their jurisdictional authority "in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). Thus, whether a court is clearly justified to dismiss an action pursuant to the Colorado River doctrine must be analyzed under an "exceptional-circumstances test," whose non-exclusive list of factors follows:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Jiménez, 597 F.3d at 27-28.

CIVIL 14-1042CCC                              5

>   As further explained by the Court of Appeals:
>
>   "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Colo. River, 424 U.S. at 818–19, 96 S.Ct. 1236. Furthermore, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone, 460 U.S. at 16, 103 S.Ct. 927.

Id., at p. 28.

Thus, we turn to the application of these factors to the case before us, and start by noting that since several of them are neutral they do not need extended discussion. These are the first factor (there is no res involved in the case), the second factor (both the federal and the Puerto Rican forum are equally convenient as both are located within the Commonwealth), the sixth factor (the Commonwealth forum is clearly adequate to protect the parties' interests - indeed, as discussed below the coverage claim is already before it via a motion for summary judgment - and in United States v. Fairway Capital Corp., 483 F.3d 34, 43-44 (1st Cir. 2007) the Court understood this factor was important only when it disfavored abstention), the seventh factor (there is nothing vexatious or contrived about ACE's federal lawsuit) and the eight factor (no issues of removal jurisdiction present here).

As to the third factor, the desirability of avoiding piecemeal litigation, it has been explained that it does not refer to the repetitive adjudication that necessarily takes place in all cases involving concurrent federal-state jurisdiction. Rather, it refers "to some additional factor that places the case beyond the pale of duplicative proceedings" weighing in favor of dismissal only if there is some exceptional basis for dismissing one action in favor of the other. Jiménez, 597 F.3d at 29. As an example of such an exceptional basis,

CIVIL 14-1042CCC                           6

in Jiménez the Court of Appeals made reference to its decision in Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc., 751 F.2d 475 (1st Cir 1985), a case which involved a state tort action against an insurer for injuries allegedly caused by products manufactured by its insured, and a parallel federal action in which the insurer sought a declaratory judgment as to its rights and obligations under the liability insurance policies it issued to the manufacturer. The Court of Appeals there held that "piecemeal litigation could severely prejudice the rights of one of the parties" for "[i]f the federal and state actions were to proceed concurrently, there is the real possibility that the two courts might interpret the same standard policy language differently . . ." Such is the situation here too, where all indications are that the issue of coverage will be adjudicated by the Commonwealth court since it has been raised in ACE's affirmative defenses included in its Answer to the Complaint filed on June 5, 2013 (see D.E. 20-1, pp. 8-12) and has been submitted for resolution though a motion for partial summary judgment filed by the plaintiffs therein (see D.E. 20-2). Thus, this factor debilitates the presumption in favor of exercising jurisdiction.

As to the fourth factor, the order in which the forums obtained jurisdiction, it has been noted that its label is a misnomer for what matters is the relative progress of the suits instead of the strict order in which the courts obtained jurisdiction. This federal action has not progressed beyond the filing of defendants' dismissal motion on abstention grounds, and while the coverage issue appeared prone to disposition via summary judgment, the deadline for the filing of such motions already elapsed without any such motion having been filed. See Case Management Order (D.E. 19), establishing January 29, 2015 as the deadline for the filing of dispositive motions. The non-jury trial here is

CIVIL 14-1042CCC                      7

currently scheduled to start on September 1, 2015. Id. In the Commonwealth case, however, the issue of coverage has already been presented to that court via summary judgment and a resolution appears imminent as said court issued an Order on October 8, 2014, later amended on November 14, 2014, instructing the parties to stipulate the uncontested material facts and also explain why the rest of the material facts were not at issue. See D.E. 26-1. "The Commonwealth's head start into the merits lessens the federal court's need to exercise jurisdiction." Jiménez, 597 F.3d at 31.

Regarding the fifth factor, whether state or federal law controls, it is uncontroverted that the coverage dispute turns entirely on issues of Puerto Rico law. "It is significant that no federal issues are raised in the instant declaratory judgment action and that no federal interest would be served by retaining jurisdiction over the case." Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc., 751 F.2d at 477. This fifth factor also favors abstention.

Thus, a review of all the applicable factors which have relevance to the Colorado Rivers abstention analysis convinces us that abstention is appropriate in this case. The enhanced potential for piecemeal litigation, the exclusive applicability of Puerto Rico law, and the advanced stage of the parallel litigation in the Commonwealth court all tilt the balance in favor of abstention to allow said court to adjudicate the particular coverage issue also raised in this forum through ACE's declaratory judgment action.

Accordingly, the Motion to Dismiss Based on Abstention Grounds filed by defendants Ivyport, Fernández and Navas on May 21, 2014 (**D.E. 15**) and supplemented on December 31, 2014 (**D.E. 26**) is GRANTED. As all indications are that the coverage issue will be resolved by the Commonwealth

CIVIL 14-1042CCC                                8

court where the parallel litigation is pending, this action is DISMISSED, without prejudice to be reasserted if ACE is later able to demonstrate the inadequacy of the Commonwealth forum.  See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 28 (1983).

    SO ORDERED.

    At San Juan, Puerto Rico, on March 9, 2015.

                                      S/CARMEN CONSUELO CEREZO
                                      United States District Judge